IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHARLIE COOK,

       Plaintiff,

vs.                          CASE NO. 1:17-cv-218-MW-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for Period of Disability and Disability Insurance Benefits under

Title II of the Social Security Act ("the Act"). ECF No. 1. The Commissioner

has answered, ECF No. 9, and both parties have filed briefs outlining their

respective positions. ECF Nos. 12, 13. For the reasons discussed below, it

is recommended that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed his Title II application on March 28, 2014, alleging a

disability onset date of June 11, 2013. (R. 18, 59, 67, 147–50.) His

applications were denied initially and upon reconsideration. (R. 59–66, 68–77, 83–86, 88–93.) After a hearing held on April 20, 2016, the ALJ then issued a decision unfavorable to Plaintiff on July 13, 2016. (R. 18–26.) The Appeals Council denied Plaintiff's request for review on June 26, 2017. (R. 1–3.) Plaintiff then filed the instant appeal. ECF No. 1.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

*Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358

(11th Cir. 1991). The district court must view the evidence as a whole,

taking into account evidence favorable as well as unfavorable to the

decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835,

837 (11th Cir. 1992) (holding that the court must scrutinize the entire

record to determine reasonableness of factual findings); *Parker v. Bowen,*

793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider

evidence detracting from evidence on which the Commissioner relied).

However, the district court will reverse the Commissioner's decision on

plenary review if the decision applies incorrect law, or if the decision fails to

provide the district court with sufficient reasoning to determine that the

Commissioner properly applied the law. *Keeton v. Dep't Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful

activity by reason of any medically determinable physical or mental

impairment that can be expected to result in death, or has lasted or can be

expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. § 404.1505 (2015).[1] The

---

[1] All further references to 20 C.F.R. will be to the 2017 version, unless otherwise specified.

impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 404.1520. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, he is not disabled. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. §§ 404.1520(e)–(f). Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. § 404.1520(g).

## III.  SUMMARY OF THE RECORD

### A.  Medical Evidence

In November 2008 Plaintiff visited the Orthopedic Institute regarding his low back pain. Plaintiff's physical exam findings were normal, but the MRI of the lumbar spine showed degenerative disc disease at L5-S1 with dark disc disease at L5-S1 and a central to right paracentral disc protrusion at these levels. The impression was diskogenic back pain with intermittent lumbar radiculopathy. Plaintiff's treatment plan was physical therapy. (R. 250–53.)

Plaintiff underwent physical therapy at Lake Area Physical Therapy & Aquatics from November 2008 through December 2008 to address his lumbar spondylosis. He was considered a good candidate for skilled physical therapy intervention for pain relieving modalities and lumbar stabilization exercises. His progress and response to physical therapy were both noted as good. (R. 257–59.)

Plaintiff visited the Orthopedic Institute throughout 2009. In January the impression was known L5-S1 lumbar degenerative disc disease and dark disc disease. In February Plaintiff was noted to be a surgical candidate after failed conservative treatment of physical therapy and

epidural steroid injections. But then in August 2009 Plaintiff had a followup after receiving another lumbar epidural steroid injection. Plaintiff reported that he experienced good relief of his prior low back pain but that he still had some leg pain. The impression was known diskogenic back pain secondary to lumbar degenerative disc disease, and the treatment plan was to continue conservative treatment with epidural steroid injections as needed. (R. 247–49, 254–56, 286–87.)

In April 2012 and then from April 2013 through April 2014 Plaintiff visited Primary Care Physicians of Gainesville. Plaintiff's physical examinations were normal, including full range of motion of the shoulder, neck, and cervical spine, although Plaintiff did have tenderness and decreased range of motion elsewhere in the spine at times. Throughout 2013 his assessments included neck pain, for which he was prescribed medication, and dyspepsia. Then throughout 2014 his assessments included low back pain, for which he was prescribed medication, as well as lower leg joint pain, dyslipidemia, diabetes mellitus, headache, and obesity. (R. 262–85.)

Plaintiff returned to the Orthopedic Institute in July 2013. Plaintiff complained of neck and left shoulder and arm pain. At this visit he said that

his symptoms were somewhat relieved with anti-inflammatories, pain medications, and raising his arm over his head. Plaintiff's physical examination revealed normal findings, and his strength was 5/5 in all extremities other than left trapezius weakness of 4+/5. It was noted that the MRI of his cervical spine revealed C5-6 and C6-7 cervical spondylosis with marked degenerative disc disease and neural foraminal narrowing. The impression was cervicalgia and associated cervical radiculopathy, and the treatment plan involved physical therapy only. (R. 243–46, 288–91.)

Plaintiff returned to Primary Care Physicians from May 2014 to December 2014. Plaintiff's physical exam findings were overall normal other than tenderness over the lumbar spine. Plaintiff also had MRIs in May 2014, which revealed mild disc disease at L5-S1 similar to his 2007 exam and mild osteoarthritic disease of the right hip unchanged from 2006 exam. Additionally, in November 2014 Plaintiff had decreased range of motion of his cervical spine, and in December he experienced painful shoulder movement. His assessments during this time period included diabetes mellitus, obesity, neck pain, low back pain, and paresthesia of arm. But his treatment included only medication and continuing physical therapy. (R. 298–305, 328–30, 333–35.)

Plaintiff returned to the Orthopedic Institute in December 2014 and January 2015 to address his complaints of lower- and mid-back pain that travels to the legs. Plaintiff's physical exam findings were normal other than moderate paraspinous muscle spasm in the back. The impression in December was increasing back and leg pain associated with lumbar radiculopathy and an MRI was ordered. Plaintiff's MRI revealed that he has degenerative disc disease at L3-4 and L5-S1 with a large annular tear and disk herniation at the L5-S1 level as well as advanced degenerative disc and joint disease at C5-6 and C6-7. As a result, Plaintiff returned in February 2015 for a lumbar epidural steroid injection.  (R. 32–34, 37–38, 331–32, 336.)

Then in May 2015 his treatment notes from the Orthopedic Institute show that he had cervical spondylosis with significant degenerative disc disease and neural foraminal narrowing at C5-6. Plaintiff also had adjacent segment disease at C6-7 and C4-5. The impression was left C6 radiculopathy, and a cervical MRI was ordered. (R. 35, 343.)

Throughout 2015 Plaintiff continued visits at Primary Care Physicians of Gainesville. His physical examinations revealed overall normal findings other than at times painful shoulder movement, decreased left arm

strength, and left leg tenderness. His assessments included dyslipidemia, diabetes mellitus, neck pain, low back pain, paresthesia of arm, and pruritus. His treatment consisted solely of medication. (R. 337–42, 344–52.)

Plaintiff also visited Shands Hospital and UF Physicians in 2016 regarding his Type 2 Diabetes Mellitus. His physical examinations revealed normal findings, including normal range of motion for his musculoskeletal exam. His diagnoses included Type 2 diabetes mellitus, hyperlipidemia, and blurry vision. (R. 311–25, 353–63.)

In 2016 Plaintiff also continued treatment at Primary Care Physicians of Gainesville. Again, his physical exam findings were normal, and his assessments included diabetes mellitus and neck pain, which were treated with medication. Plaintiff also underwent a diabetic foot exam in April 2016, and the impression was onychomycosis, for which Plaintiff elected treatment by oral medication. (R. 364–72.)

## B.  Opinion Evidence

### 1. Gloria Hankins, M.D.

At the reconsideration level, Dr. Hankins provided a physical residual functional capacity assessment of Plaintiff. She opined that Plaintiff could

lift and/or carry 20 pounds occasionally and 10 pounds frequently.
Additionally, she noted that Plaintiff could stand, sit, and walk for about 6
hours in an 8-hour workday. Further, Plaintiff could only occasionally stoop
and crouch, but he could frequently kneel, crawl, and climb ramps, stairs,
ladders, ropes, and scaffolds. Overall, she opined that Plaintiff could do
light work. (R. 73–76.)

## C.  Hearing Testimony

At the hearing held on April 20, 2016, Plaintiff was 52 years old.
Plaintiff testified that he stopped working on June 11, 2013, his alleged
disability onset date, because his back would not allow him to work,
especially as it pertains to lifting, standing, and bending. He also said that
around that time he was sent for physical therapy, but his insurance would
not cover it. (R. 44–49.)

Plaintiff testified about his daily activities and restrictions during the
relevant time period. He said that when he stopped working he would cook
and clean around the house. He would also would mow his yard on a riding
mower, which would take about 30 to 40 minutes. He also said he has
problems sitting for longer periods of time, such as for 15 to 20 minutes in
a regular chair or two to three hours in a recliner. Further, he said he can

only stand for 15 to 20 minutes. (R. 49–52.)

**D.  The ALJ's Findings**

The ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2015, and that Plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of June 11, 2013, through his date last insured of December 31, 2015. The ALJ also found that he has the following severe impairments: disorders of the spine and diabetes mellitus. However, none of these impairments, or a combination thereof, meets or medically equals the severity of one of the listed impairments. (R. 20.)

Based on the entire record, the ALJ concluded that Plaintiff had the RFC to perform light work, except with no climbing or exposure to hazards and no more than occasional crouching and crawling. Additionally, Plaintiff must be allowed to change positions every 30 minutes to be able to perform jobs at both a seated and standing position. (R. 21.)

The ALJ then found that Plaintiff was not capable of performing any past relevant work. However, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Accordingly, the ALJ concluded that Plaintiff was not

under a disability at any time from June 11, 2013, the alleged onset date,

through December 31, 2015, the date last insured. (R. 24–25.)

## IV.  DISCUSSION

Plaintiff makes the following three arguments on appeal: (1) the ALJ

erred in his credibility assessment of Plaintiff, (2) the ALJ erred in failing to

fully and fairly develop the record, and (3) substantial evidence does not

support the ALJ's RFC determination. ECF No. 12 at 20–27. The Court

discusses each of these arguments in turn below.

## A. The ALJ did not err in his credibility assessment.

With regard to the ALJ's credibility assessment, Plaintiff argues that

based on the objective medical evidence discussing Plaintiff's diagnoses of

cervical and lumbar radiculopathy, the ALJ should have found Plaintiff's

testimony regarding his ability to sit, stand, walk, and lift entirely credible

because they were supported by substantial evidence. Specifically, the

testimony the ALJ should have found entirely credible includes Plaintiff's

statements that he cannot lift 20 pounds unassisted, he cannot sit in a

normal chair for more than 15 or 20 minutes, and that he cannot operate a

riding lawnmower for more than 30 to 40 minutes. But, according to

Plaintiff, rather than properly assessing his credibility based on his

diagnoses, the ALJ's credibility assessment "really consists of saying I don't believe him." ECF No. 12 at 20–22, 24.[2]

Under SSR 16-3p, which guides an ALJ's assessment of a plaintiff's credibility, the ALJ must focus on whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." SSR 16-3p, 81 Fed. Reg. 14166, 14170; *see also Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1307–08 (11th Cir. 2018). Further,

> when evaluating a claimant's symptoms the adjudicator will "not assess an individual's overall character or truthfulness" but instead "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities."

*Hargress*, 883 F.3d at 1308 (quoting SSR 16-3p, 81 Fed. Reg. 14166, 14171).

If the ALJ decides to discredit the claimant's testimony as to his

---

[2] Plaintiff also argued that the ALJ failed to consider the difference in Plaintiff's earnings prior to his alleged onset date and the amount he would receive as disability benefits. ECF No. 12 at 20–21. But Plaintiff offers no support for the proposition that the ALJ was required to consider or compare these records.

subjective symptoms, the ALJ must articulate explicit and adequate

reasons for doing so or the record must be obvious as to the credibility

finding. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). While the

ALJ does not have to cite particular phrases or formulations, broad findings

that a claimant was not credible and could work are, alone, insufficient for

the Court to conclude that the ALJ considered the claimant's medical

condition as a whole. *Id.* at 1562. The ALJ's articulated reasons must also

be supported by substantial evidence. *Jones v. Dep't of Health & Human*

*Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The Court will not disturb a

properly articulated credibility finding that is supported by substantial

evidence. *Foote*, 67 F.3d at 1562.

In this case the ALJ determined, after considering the record

evidence, that Plaintiff's

> medically determinable impairments could reasonably be
> expected to cause some of the alleged symptoms; however,
> the claimant's statements concerning the intensity, persistence
> and limiting effects of these symptoms are not entirely
> consistent with the medical evidence and other evidence in the
> record for the reasons explained in this decision. Specifically,
> the objective medical evidence does not support the level of
> limitation caused by the claimant's alleged subjective
> experience of symptoms. Accordingly, the undersigned cannot
> simply accept the claimant's assertions as his maximum
> capabilities.

(R. 21.)

In reaching this conclusion, the ALJ considered the medical and opinion evidence, Plaintiff's daily activities, and Plaintiff's subjective statements about the intensity, persistence, and limiting effects of his symptoms. Not only did the ALJ articulate explicit and adequate reasons for discrediting Plaintiff's testimony, but substantial evidence supports the ALJ's credibility assessment as well as the ALJ's RFC determination.

In explaining the reasoning behind the ALJ's credibility assessment, the ALJ first discussed Plaintiff's hearing testimony, which included some of Plaintiff's statements about his activities of daily living and functional limitations. For example, Plaintiff testified that he can cook and clean, lift 20 pounds, sit and stand for 20 minutes at a time, and ride a mower for 20 minutes.[3] (R. 21.) *See also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (noting that reports of daily activities are also a proper consideration in making a credibility determination).

The ALJ then compared these subjective statements regarding his limitations to the medical and opinion evidence in the record. The ALJ first

---

[3] A review of the hearing testimony reveals that Plaintiff actually testified that he could ride a riding mower for roughly 30 to 40 minutes. (R. 49–52.) But this mistake does not render the ALJ's credibility assessment or RFC determination erroneous.

discussed the medical evidence in the record from the time period prior to Plaintiff's date last insured, December 31, 2015. The ALJ first noted that "[t]he evidence of record documents a history of back pain since 2007 related to lumbar disc disease and that the claimant received physical therapy and injections; however, there are no medical records in the file after 2009 until 2012 and nothing after 2012 until 2013." The ALJ then went on to discuss the diagnostic testing and treatment records in detail from the Orthopaedic Institute and Primary Care Physicians, all of which resulted in diagnoses of cervicalgia and associated cervical radiculopathy, low back pain/lumbago, joint pain, type II diabetes mellitus, and degenerative disc and joint disease. (R. 22–23.)

The ALJ next discussed the medical evidence for the period after Plaintiff's date last insured. This medical evidence was from Primary Care Physicians, UF Health Endocrinology Clinic, and Shands Hospital. The ALJ noted that Plaintiff's diagnoses during this time period included type II diabetes mellitus with severe hyperglycemia, hyperosmolar state, hyperlipidemia, blurry vision, and nausea. (R. 23.)

In addition to the medical evidence, the ALJ considered and relied upon the opinion evidence in the record. The ALJ specifically considered

the opinion of the State agency consultant that Plaintiff could perform light

work and found that it "is supported by detailed explanation, rationale, and

analysis of the medical evidence of record available at the time of review."

The ALJ thus gave the opinion significant weight. But based on the entire

medical record the ALJ ultimately found that Plaintiff would need additional

limitations because Plaintiff cannot climb or have exposure to hazards and

requires a sit/stand option every 30 minutes based on Plaintiff's testimony.

(R. 23–24.)

After considering all the evidence as well as Plaintiff's testimony, the

ALJ also considered the combined effects of

Plaintiff's impairments and the possibility that the combined effect could be

greater than each of Plaintiff's impairments considered separately. This is

evidenced by the ALJ's statement in his written decision that "[t]he claimant

did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments." (R. 20.)

After considering all the evidence as well as Plaintiff's testimony, the

ALJ ultimately determined that despite Plaintiff's alleged severe limitations,

Plaintiff had the RFC to perform light work "except with no climbing or

exposure to hazards; no more than occasional crouching and crawling;

and, he must be allowed to change positions every 30 minutes to be able

to perform job duties at both a seated and standing position." The ALJ

summarized this finding as follows:

> In sum, the above residual functional capacity assessment is
> supported by the following. First, the claimant has reported
> daily activities, which are not entirely limited. At the hearing, the
> claimant testified to cooking, cleaning, and mowing the yard.
> He also stated he was able to lift 20 pounds. Second, although
> the claimant has received treatment for the allegedly disabling
> impairments, that treatment has been essentially routine and/or
> conservative in nature. Furthermore, the record reveals that the
> treatment has been generally successful in controlling those
> symptoms when the claimant is compliant. However, there is
> evidence of non-compliance with medications, diabetic regimen
> and physical therapy. The undersigned also notes that
> examinations and diagnostic testing do not document any
> objective medical findings that would prevent the claimant from
> performing work activity within the established residual
> functional capacity. Furthermore, given the claimant's
> allegations of totally disabling symptoms, one might expect to
> see some indication in the treatment records of restrictions
> placed on the claimant by the treating doctor. Yet a review of
> the record in this case reveals no restrictions recommended by
> the treating doctor.

(R. 21, 24.)

As is evident in the ALJ's opinion, the ALJ properly considered

Plaintiff's testimony and daily activities, the objective medical evidence,

and the opinion evidence in the record, eventually finding that while

Plaintiff's impairments could produce some of his alleged symptoms, his

testimony was not entirely consistent with the evidence in the record.

Based on the record as a whole, the ALJ found that Plaintiff can perform light work with certain limitations as provided in the RFC determination. As discussed above, these findings are properly articulated and supported by substantial evidence.

Plaintiff's only argument why the ALJ should have accepted Plaintiff's subjective statements regarding his extreme limitations is that Plaintiff had diagnoses of cervical and lumbar radiculopathy. ECF No. 12 at 21–22, 24–26. But the ALJ's opinion reveals that the ALJ considered these diagnoses and all the other diagnoses in the record when discounting Plaintiff's subjective statements regarding his limitations. Plaintiff's argument ignores the well settled principle that a mere diagnosis—whether or cervical and lumbar radiculopathy or anything else—is not dispositive of disability. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *see also McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work . . . .") Disability is about functional limitations on a claimant's ability to engage in work activities and

not simply whether a claimant can point to a diagnosis.

The ALJ appropriately considered all the evidence in the record, not just Plaintiff's diagnoses. In so doing, the ALJ found that Plaintiff's statements of his symptoms and limitations were not entirely consistent with the record evidence. His daily activities did not reflect a finding of disability, his treatment was essentially routine and conservative, his treatment was generally successful in controlling symptoms when Plaintiff complied, there were no objective findings that would preclude all work activity, and no treating doctor prescribed restrictions on Plaintiff's activities. The ALJ then accurately concluded that this objective medical evidence was inconsistent with Plaintiff's allegations of totally disabling limitations.

Despite Plaintiff's arguments to the contrary, the ALJ did not err in discrediting Plaintiff's testimony as evidenced by the record as a whole and the ALJ's opinion. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (noting that "[t]he question is not . . . whether ALJ could have reasonably credited [the plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it"). Because the ALJ's credibility assessment is properly articulated and is supported by substantial

objective medical evidence, the Court concludes that the ALJ did not err in his credibility assessment.

## B. The ALJ did not fail to fully and fairly develop the record.

Plaintiff next argues that the ALJ erred by failing to fully and fairly develop the record. More specifically, Plaintiff says "the ALJ's duty to fully and fairly develop the record are violated by a hearing in which the ALJ inquires into issues related to a claimant's residual functional capacity, for 10 minutes or less." Plaintiff also asserts that "the brevity of the ALJs questioning of Plaintiff Cook should be seen as *per se* prejudicial; as it would be disingenuous of the defendant Commissioner to respond by arguing that it is possible to fully and fairly develop the administrative record, with regard to the Plaintiff's testimony, in 10 minutes." ECF No. 12 at 22–24.

An ALJ has a duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). This duty requires the ALJ "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000); *see also Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (noting that the ALJ must "scrupulously and conscientiously probe into, inquire of, and

explore for all the relevant facts.").

In developing the record during the hearing, the ALJ must "elicit . . .
clearly relevant and readily available testimony." *Brown*, 44 F.3d at 936
(citing *Cowart*, 662 F.2d at 735). Questioning witnesses or the claimant
may be helpful if the individual is "able to provide useful information."
*Townsend v. Comm'r of Soc. Sec.*, 555 F. App'x 888, 891–92 (11th Cir.
2014) (citing *Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997)). Testimony
may be brief, however, if "it would not have been helpful or credible" or if
there is not "more the ALJ might have learned from further questioning." *Id.*

Of course it is not enough for a claimant to speculate that "he would
have benefitted from a more extensive hearing." *Id.* at 891 (citing *Kelley v.
Heckler*, 761 F.2d 1538, 1540–41 (11th Cir. 1985)). Instead, "even when
the hearing [is] 'less than totally satisfactory,' remand is unwarranted
unless the claimant can show prejudice." *McCloud v. Barnhart*, 166 F.
App'x 410, 417 (11th Cir. 2006) (quoting *Kelley*, 761 F.2d at 1540–41).

Prejudice "at least requires a showing that the ALJ did not have all of
the relevant evidence before him in the record (which would include
relevant testimony from claimant), or that the ALJ did not consider all of the
evidence in the record in reaching his decision." *Kelley*, 761 F.2d at 1540.

Additionally, prejudice has been found when the record "has evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown*, 44 F.3d at 935 (quoting *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. Unit A July 1981)).

Rather than arguing that Plaintiff was prejudiced because the ALJ did not have all the necessary relevant evidence to make a decision, that the ALJ did not consider all the relevant evidence, or that there were evidentiary gaps in the record, Plaintiff makes the conclusory and unsupported assertion that questioning Plaintiff for only 10 minutes was *per se* prejudicial. But the fact that longer hearings have been found satisfactory fails to prove that the 21-minute hearing here was not.

In this case, the ALJ had sufficient evidence to make a determination as to Plaintiff's RFC. As discussed above, the ALJ properly considered all of that evidence, including the hearing testimony, medical records, and opinion evidence. Since the ALJ did not require additional evidence to make a determination regarding Plaintiff's entitlement to disability benefits, there was no need to engage in a lengthy questioning of Plaintiff. *See Townsend*, 555 F. App'x at 891–92.

Moreover, Plaintiff could have provided additional testimony at the hearing or provided additional evidence after the hearing. The ALJ

specifically stated that he would hold the record open for 10 days to allow Plaintiff to provide additional records. Further, the ALJ offered Plaintiff's attorney an opportunity to question Plaintiff during the hearing, but the attorney had no questions for Plaintiff. (R. 47, 52–53.) Yet, despite having had the opportunity to ask questions at the hearing and the opportunity to supplement the record Plaintiff takes issue with the length of the hearing and suggests that the ALJ was required to question Plaintiff further.

Because Plaintiff failed to show that he was actually prejudiced by the ALJ's brief questioning of Plaintiff during the hearing, Plaintiff has provided no reason to reverse the ALJ's decision for further development of the record. *See, e.g.*, *McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 600 (11th Cir. 2016) (refusing to remand a case that involved an 11-minute hearing where the claimant failed to show prejudice); *Kelley*, 761 F.2d at 1540–41 (refusing to remand a case that involved a 12-minute hearing where the claimant failed to show prejudice).

## C. Substantial evidence support's the ALJ's decision.

Lastly, Plaintiff asserts that "[a]fter taking Plaintiff Cook's cervical and lumbar radiculopathy into account, substantial evidence does not support ALJ Barlow's finding that Plaintiff Cook can work eight hours a day, five

days a week at the light exertional level." More specifically, Plaintiff argues

without citation to the record that "substantial evidence of record does not

support ALJ Barlow's finding that Plaintiff Cook, in light of his combination

of cervical and lumbar radiculopathy, which limit his ability to sit, stand,

walk and lift with his left arm could be on his feet six hours a day five days

a week lifting 20 pounds up to one third of the workday." ECF No. 12 at

25–27.

    As the Court already discussed in greater detail above, substantial

evidence supports the ALJ's finding that Plaintiff could perform light work

with the additional limitations included in the RFC determination. While it is

true that Plaintiff suffered from cervical and lumbar radiculopathy, the ALJ

considered these diagnoses as well as any potential symptoms and

limitations resulting from these diagnoses, which are supported by the

medical and opinion evidence in the record. (R. 21–24.)

    In considering all the evidence in the record, the ALJ determined that

Plaintiff could perform light work with limitations because the ALJ found

that there were no examinations or diagnostic testing that demonstrated

Plaintiff could not perform work within the prescribed RFC and there were

no indications in the treatment records of any restrictions placed on Plaintiff

by his treating doctors. Instead, the record consisted of treatment notes revealing generally successful conservative and routine treatment so long as Plaintiff was compliant with his treatment as well as testimony from Plaintiff that his daily activities were not entirely limited. (R. 21–24.)

To the extent Plaintiff is arguing that the ALJ failed to properly consider the combination of Plaintiff's impairments, this assertion is clearly contradicted by the ALJ's opinion. The ALJ specifically stated that "[t]he claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (R. 20.)  This statement is sufficient to show that the ALJ properly considered the impact of the combination of Plaintiff's impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (noting the ALJ sufficiently considered the combination of impairments where the ALJ's stated that the plaintiff "did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4").

In this case the ALJ properly considered all the evidence in the record regarding Plaintiff's impairments and the combination of his impairments. Plaintiff has failed to identify or point to any evidence of any

specific limitations beyond those that the ALJ included in the RFC

determination based on Plaintiff's cervical and lumbar radiculopathy and

other severe impairments. The Court, therefore, concludes that the ALJ

properly determined that Plaintiff had the RFC to perform light work with

limitations and that substantial evidence supports that determination.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the

decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** on the 9th day of July 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**